# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | | |
|---|---|---|
| HAVIS FRANCOIS, *et al.* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 2000/0112 |
| HARTFORD HOLDING COMPANY, *et al.* | : | NO. 2001/0009 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                           **May 4, 2010**

In this wrongful death action brought on behalf of four Dominican nationals and a Netherlands citizen for damages arising out of a fatal airline crash on Dominica, the defendants have moved to dismiss on *forum non conveniens* grounds. Opposing the motion, the plaintiffs contend that Dominica is not an adequate alternative forum and litigating the case there would be inconvenient.

The fateful flight originated in St. Maarten and was destined for Dominica where it crashed on its approach to the airport. Except for Jonathan Lake who was a citizen of the Netherlands and a resident of St. Maarten, the decedents were Dominican nationals. They had purchased round-trip tickets in Dominica from the defendant, Cardinal Airlines, Ltd. ("Cardinal"), a Dominican corporation created, registered and operating under the laws of Dominica. The aircraft was leased by defendant Hartford Holding Company to the defendant Air Anguilla, Inc., a St. Thomas corporation, which maintained and flew it for Cardinal pursuant to a lease agreement entered into in Dominica. Cardinal was a local carrier authorized to transport passengers only to and from the islands of Dominica, Barbados, St. Maarten and Antigua.

The crash was investigated by the Organization of Eastern Caribbean States Civil

Aviation Authority, the United States National Transportation Safety Board and the Federal Aviation Administration. The United States agencies were involved because Air Anguilla, a Virgin Islands-based company, had maintained and staffed the aircraft. They determined that the cause of the crash was pilot error and overloading.

Four personal representatives brought suit on behalf of five decedents' estates. Two personal representatives of three of the decedents' estates settled their claims with the defendants. Only two plaintiffs on behalf of the remaining two decedents' estates continue to pursue the litigation. All plaintiffs are represented by the same attorney. Within the context of this case, we have considered the defendants' motion and the plaintiffs' response. We concluded that the motion should be granted.[1]

The *forum non conveniens* analysis entails a three-step sequential process. Initially, we must determine whether the alternative forum can adequately entertain the action. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F. 3d 183, 189-90 (3d Cir. 2008). If not, the inquiry ends, and the action stays in the forum where it was filed. If there is an adequate alternative forum, we proceed to the second and third steps. We consider the deference to be given the plaintiff's choice of forum. *Id.* at 190. Then, at the third step, we balance the relevant public and private interests to gauge the vexatiousness or oppressiveness of trying a case in the chosen forum on the defendant against the plaintiff's convenience. If the balancing reveals that the case in the chosen forum would result in "oppression or vexation to the

---

[1] *See* Order entered Feb. 4, 2010 (Doc. No. 116 in Civ. A. No. 2000-0112; Doc. No. 182 in Civ. A. No. 2001-009). A written opinion was not issued because it was assumed the plaintiffs conceded the transfer. Plaintiffs' counsel failed to appear at oral argument on the defendants' motions for summary judgment and for dismissal on *forum non conveniens* grounds. We granted the dismissal motion. Because the plaintiffs did not ask for reconsideration or offer any excuse for counsel's failure to appear or to explain his failure to communicate with the court, we did not issue an opinion. Now that plaintiffs have filed an appeal, we issue this memorandum opinion to explain our reasoning.

defendant out of all proportion to the plaintiff's convenience," the case may be dismissed on *forum non conveniens* grounds. *Id.* at 189-90 (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

In conducting the alternative forum analysis, we rely on the parties' submissions, keeping in mind that the defendant bears the burden of demonstrating that the action should be dismissed on a *forum non conveniens* basis. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).

The threshold inquiry is the adequacy of the alternative forum. In determining whether the alternative forum is adequate, we consider two factors: whether the defendants are amenable to process there; and, whether the other forum's legal or procedural requirements would prevent the plaintiffs from litigating their claims. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22 (1981) (noting that if the foreign forum does not recognize a legal remedy for the plaintiffs' causes of action or defendants are not amenable to service of process there, dismissal is inappropriate); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) (noting that if the foreign forum's statute of limitations would bar claim, dismissal is inappropriate); *Bhatnagar*, 52 F.3d at 1227-28 (noting that defendants must be amenable to process in the alternative forum, and that extreme delays in the alternate forum can render the alternative "inadequate"). If the foreign forum cannot exercise jurisdiction over the defendant, it is not an available forum. In that case, we never reach the adequacy issue. Only if the foreign forum is available do we determine whether it is an adequate forum.

Part of the defendants' burden is to show that they are amenable to process in Dominica. To obviate any concern regarding process, the defendants have consented to

3

jurisdiction in Dominica.[2] The parties' Dominican law experts both agree that a foreign defendant may submit to the jurisdiction of the Courts of Dominica. *See* Affidavit of Dr. Winston Anderson ("Anderson Aff."), ¶ 9; Affidavit of Gerald D. Burton, ¶ 11. Indeed, another action filed in Dominica against the same defendants arising out of the same aircraft crash was tried there. Thus, Dominica is an available forum.

The alternative forum is deemed inadequate only if it does not permit litigation of the subject matter of the dispute or provides a clearly inadequate or unsatisfactory remedy that is actually no remedy at all. *Piper Aircraft*, 454 U.S. at 255 n. 22. A showing that the substantive law in the alternative forum is less favorable to the plaintiffs is not a sufficient reason to find that the other forum is inadequate. *Id.* at 247, 254-55 (holding that although the relatives of the decedents might not be able to rely on a strict liability theory, and their potential damages award may be smaller, there was no danger that they would be deprived of any remedy or treated unfairly because they could still pursue their negligence claims).

Dominica is an adequate alternative forum. The plaintiffs can assert their claims because Dominica recognizes a cause of action for personal injury arising from negligence. The experts agree.[3]

The defendants also have waived any defense based upon the statute of limitations.[4]

---

[2] *See* Renewed Motion for Summary Judgment, or in the Alternative, Motion to Dismiss on Grounds of *Forum Non Conveniens* (Doc. No. 150) at 27.

[3] *See* Affidavit of Gerald D. Burton, ¶¶ 8-10 (stating that "Dominica recognizes and allows a cause of action to be maintained against a person or institution which is responsible for causing the wrongful death of another. Such wrongful death claims are governed by the Fatal Accidents Act, Chapter 7:59 of the Revised Laws of Dominica 1990 and the Law Reform (Miscellaneous Provisions) Act, Chapter 7:99 of the Revised Laws of Dominica 1990."). *See* Anderson Aff. ¶¶ 8-10.

[4] *See* Renewed Motion for Summary Judgment, or in the Alternative, Motion to Dismiss on Grounds of *Forum Non Conveniens* (Doc. No. 150) at 27.

The plaintiffs offer the unsupported opinion of Dr. Winston Anderson that the Dominica courts would not recognize a waiver of the statute of limitations defense. Dr. Anderson states that because the statute of limitations provision of the Fatal Accidents Act[5] is written in "mandatory terms," and the "courts of the Caribbean and of Great Britain, from whose Common Law our Caribbean legal systems emerged, have declined to entertain actions in cases in which mandatory periods of limitation imposed by legislation has lapsed," Dominican courts may not "entertain" the case, despite any waiver of the statute of limitations defense. Anderson Aff., ¶¶ 13-15.

In support of his opinion, Anderson cites an article he authored in 1993,[6] an unreported case cited in the article[7] and an 1832 unreported English case.[8] The article discussed the enforcement of foreign judgments that were based upon a cause of action unknown in the forum. Here, we are not confronted with a foreign judgment, but rather a pending action asserting a cognizable cause of action that was initiated and dismissed in a foreign forum. His article and the cases cited in it are inapplicable.[9]

---

[5] Chapter 7:59 of the Revised Laws of Dominica, ¶ 9(2). This provision states: "No action under this Act shall be brought after the expiration of three years from - (a) the date of death; or (b) the date of knowledge of the person for whose benefit the action is brought."

[6] Winston Anderson, *Enforcement of Foreign Judgments Founded Upon a Cause of Action Unknown in the Forum*, 42 Int'l & Comp. L.Q. 697, 704 (1993).

[7] *Quin v. Pres-T-Con, Ltd.*, Trinidad and Tobago High Court, Civil Appeal No. 2745/76 (1980), Court of Appeal, No. 73 (1985).

[8] *Leroux v. Brown*, 12 CB 801 (1832). Anderson cites this case in his affidavit for the proposition that the "provision 'no action shall be brought' is a clear declination to entertain subject matter jurisdiction" where the limitations period has lapsed. Anderson Aff., ¶ 15. He did not examine this case in his article. We were unable to locate this unreported case, and no copy was attached to Dr. Anderson's affidavit or the plaintiffs' briefs.

[9] Allowing this action to go forward would also comport with the policy reasons for a statute of limitations. The primary purposes of a time limit for bringing claims are to assure fairness to defendants,

Even if the statute of limitations defense is not waivable, the plaintiffs can still pursue their claims in Dominica. To remedy the harsh consequences of a dismissal of a foreign case on the grounds of *forum non conveniens*, Dominica established the Transnational Causes of Action (Product Liability) Act of 1997 ("TCAA"). Anderson Aff., ¶ 18. The TCAA applies to any product liability action that originated in a foreign forum, was brought against at least one foreign citizen, and was dismissed by the foreign forum on the basis of *forum non conveniens*. TCAA, §§ 2, 3(a). *See also* Winston Anderson, *Forum Non Conveniens Checkmated?* 10 J. Transnat'l L. & Policy 183, 188-89 (2001); Anderson Aff., ¶¶ 22-23.

The TCAA has a savings provision that extends the statute of limitations in a case that is dismissed on *forum non conveniens* grounds and then filed in Dominica. Section 14(2)(c) provides that the limitation period is six years from the date the action is dismissed in the foreign forum. As plaintiffs' expert has written,

> [because] foreign litigation over proper venue frequently takes upward of a decade, and is resolved long after the local limitation period has expired, [§ 14 of the TCAA] ensures that the local [Dominican] court will not dismiss actions that would otherwise be considered stale claims.

Anderson, *Forum Non Conveniens Checkmated?* 10 J. Transnat'l L. & Policy at 214. Thus, because the plaintiffs may file a transnational cause of action in Dominica if this action is dismissed, the statute of limitations there will not bar this action.

---

encourage the timely assertion of claims and deter a plaintiff from "[sleeping] on his rights." *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 428 (1965). Specifically, a defendant has the right to be, at a certain point in time, relieved of the burden to defend against stale claims, where evidence can be lost, witnesses unavailable and memories faded. *Burnett*, 380 U.S. at 428; *Celestine v. Baptiste*, Grenada, High Court of Appeal 2008/011 (Jan. 11, 2010) at 8, ¶ 13; *Ferris v. Dickenson Bay Mgmt. Ltd.*, High Court of Justice, Antigua and Barbuda, No. ANUHCV2006/0325, Oct. 25, 2007 at 8, ¶ 30. Because the defendants here are waiving their statute of limitations defense and have been on notice of the plaintiffs' claims since 2000, it will not offend any fundamental principle of Dominica's public policy to allow plaintiffs' action to proceed.

Anderson, who was the principal drafter of the TCAA, opines that this case

> is a transnational cause of action to which the provisions of the TCAA would apply, if the case were dismissed in the United States on the basis of *forum non conveniens*. But for the application of this statute, Dominica would not be an available forum for this matter.

Anderson Aff., ¶ 24. In other words, according to the plaintiffs' own expert on Dominican law, whose opinion on this issue we accept, the plaintiffs may pursue their claims in Dominica under the TCAA if this action is dismissed on *forum non conveniens* grounds.

In his self-serving declaration, which implicitly concedes that Dominica is an available forum, plaintiffs' counsel states that there are procedural hurdles that will result in undue delay and will make litigating the case difficult. He cites attorney Singoalla Blomqvist-Williams' opinion[10] that it is "unlikely" that depositions taken in the United States would be admissible in a Dominican court. This assertion is contradicted by the TCAA and Dr. Anderson. Section 9 of the TCAA states that the Dominican court "shall take judicial notice of evidence presented and accepted by foreign courts in similar proceedings involving the same or similar parties, or . . . causes of action." TCAA, § 9(1). In his article, Dr. Anderson explained that "Section 9 was inserted to ensure access by the local courts to probative evidence adduced in foreign proceedings," which includes documents stipulated to by the parties and findings made by the United States courts. Anderson, *Forum Non Conveniens Checkmated?* 10 J. Transnat'l L. & Policy at 209. None of plaintiffs' counsel's assertions are confirmed by the plaintiffs' legal expert from Dominica, Dr. Anderson. On the contrary, Dr. Anderson opined that the TCAA makes Dominica an available forum. *See* Anderson

---

[10] This "opinion" is contained in a terse and unsupported letter in response to plaintiffs' attorney's letter. Her bald conclusions are contradicted by Dr. Anderson and the statutory language of the TCAA.

7

Aff., ¶¶ 22-24.  In a case arising out of the same crash, the parties filed and tried the issues in Dominica.  Therefore, because there are no legal or unusual procedural impediments to the plaintiffs' asserting their claims in Dominica, we conclude Dominica is an adequate alternative forum.

Significantly, the Dominican courts have recently indicated that they will, in fact, entertain the plaintiffs' cause of action based on the defendants' waiver of the statute of limitations.  In the Dominican action filed by the plaintiffs following the dismissal of their action filed in the Florida state court, the Master of the High Court of Justice of the Commonwealth of Dominica stated that "no issue of any relevant limitation of actions will be taken as all the defendants excluding Air Anguilla have agreed that they will not avail themselves of any point on the limitation of actions."  *See Francois v. Cardinal Airlines Limited*, HCVAP 2006/019, Commonwealth of Dominica, Court of Appeal, September 22, 2008, at 7 ¶ 9.  Thus, Anderson's conclusion that the Dominican courts would not entertain an action that is time-barred even with the defendant's waiver of the statute of limitations defense is contradicted by the Dominican court's decision in a related action.[11]

---

[11] It is not unusual for the dismissing forum to condition the *forum non conveniens* dismissal upon the agreement of the defendant to waive its statute of limitations defense in the more convenient forum. *See, e.g.*, *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) (collecting cases, and noting that the conditioning of a dismissal on the waiver of the statute of limitations defense is appropriate in cases where, as a consequence of delays inherent in litigation, the defendant has acquired a defense of untimeliness in the alternative forum, but inappropriate in cases where a plaintiff seeks to defeat *forum non conveniens* dismissal by waiting until the statute of limitations in the alternative forum has expired and then filing suit in his preferred forum with the longer limitations period and arguing that the alternative forum is inadequate); *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 984 (2d Cir. 1993) (*forum non conveniens* dismissals are often appropriately conditioned to protect the party opposing dismissal) (collecting cases); *In re Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 205 (4th Cir. 2009) (affirming the district court's *forum non conveniens* dismissal, but modifying the judgment to make it conditioned on defendant's agreement to not assert a statute of limitations defense in the new forum).  Additionally, although many appellate courts have modified dismissal orders to explicitly include that the dismissal is conditional, as long as the record reflects the defendants' consent to such condition, this is not necessary.  *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1235 (2d Cir. 1996) (where defendants consented to waive the statute of limitations defense and submit to the jurisdiction of the British courts, held not necessary to

Having determined that Dominica is an adequate alternative forum, we proceed to consider the deference to be given the plaintiffs' choice of forum. In doing so, we recognize that even a foreign plaintiffs' choice is entitled to deference, albeit less than a domestic plaintiff's. *Windt*, 529 F.3d at 190. Nevertheless, foreign plaintiffs "may bolster the amount of deference due their choice by making a strong showing of convenience." *Id.* (citing *Lony v. E.I. Du Pont de Nemours & Co.* (*"Lony I"*), 886 F.2d 628, 634 (3d Cir. 1989)). In determining the amount of deference due the foreign plaintiffs' choice of forum, we must consider the particular circumstances of the litigation, including whether the chosen forum has a substantial relationship to the parties and the events involved in the case. *Compare Lony I*, 886 F.2d at 629-30 (fact that the foreign plaintiff's chosen forum is the defendant's state of incorporation, where the defendant's corporate headquarters, headquarters of the division in question, research laboratories and bulk of liability evidence are located, and is where the conduct that caused the alleged injury occurred, has "considerable weight in showing that the plaintiffs choice was based on convenience"), *with Windt*, 529 F.3d at 191 (where chosen forum is not home of two defendants, evidence is not concentrated there and an insubstantial amount of conduct gave rise to the dispute there, and plaintiffs are Dutch residents serving as representatives of an insolvent Dutch company, district court properly accorded the plaintiffs' choice of forum a low degree of deference).

The plaintiffs, none of whom were United States citizens at the time the action was filed and only one of whom, Mary Anthony, purportedly became a citizen since then, have given no reason why they chose the District of the Virgin Islands as the forum. None of

---

remand case to obtain the consent of the defendants to waive such defenses).

them resides here.  Their attorney has no office here and is appearing *pro hac vice*.  None of the acts regarding liability or damages occurred here.  The only connection to the Virgin Islands is that one defendant, Air Anguilla, had an office in St. Thomas.  Thus, the plaintiffs' choice of the District of the Virgin Islands is not entitled to a strong presumption of convenience, but will be given some deference.

We now turn to a balancing of the public and private interests relevant to the convenience of the chosen forum.  The public interest factors include: court congestion; the forum's interest in having local disputes decided "at home;" the interest in having the case decided in the forum whose law will govern the case; the avoidance of unnecessary conflict of laws problems; and the unfairness of burdening citizens with jury duty in a forum having no relationship to the dispute.  *Windt*, 529 F.3d at 189 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947)).  In this case, all these factors favor dismissal.

Considering the public interests, we start with the locus of the dispute.  The crash occurred on Dominica where the passengers lived and were destined.  Dominica has an interest in having its law applied to a dispute that arises out of conduct that occurred within its borders and affected its residents and citizens.

The plaintiffs argue that this case "clearly implicates the laws of the United States designed to protect its citizens who fly to and from the United States Virgin Islands and other places within the Carribean."[12]  This flight was not to or from the Virgin Islands or any part of the United States.  Nor were any United States citizens or residents on board the plane.

Trying the case in the District of the Virgin Islands will require unraveling an

---

[12] Pls.' Opp. to Defs.' Mot. for Summary Judgment (Doc. No. 159) at 14.

entanglement of a conflict of laws and burden an already back-logged civil case inventory. The Dominican courts are better able to interpret and apply Dominican law than United States courts. Having a Dominican court decide the dispute will reduce unnecessary problems with conflict of laws.

The docket in the District of the Virgin Islands is congested. There are approximately 400 pending civil cases in the St. Croix Division. The district judge is on senior status, presiding over only criminal matters. To alleviate the backlog of civil cases, several active and senior district judges in the Third Circuit have been designated to preside in the District of the Virgin Islands. Those judges accept Virgin Islands' assignments without a diminution of their own court caseloads, and thus, have limited time available to sit outside their home districts.

Additionally, trial in this district will unfairly impose jury service upon the citizens of the United States Virgin Islands who have no real connection to the dispute or the parties. Thus, considering the local nature of the dispute, the interest in resolving local disputes locally and the effect on the Virgin Islands court and citizens, the public interest balance favors Dominica as the more appropriate forum.

Private interest factors are the relative ease of access to the sources of proof; the availability of compulsory process; the cost of producing willing witnesses; the possible view of the crash site; and other considerations that bear on the case, expedition and expense of the trial. *Gulf Oil Corp.*, 330 U.S. at 508; *Windt*, 529 F.3d at 189.

In this case, the private interests affecting the convenience of the parties are

significantly impacted by the defendants conceding liability.[13]  There will be no need to compel the attendance of witnesses regarding the cause of the crash and the roles of those who played a part in it.  With the exception of a few, witnesses as to damages are on or near Dominica.  The decedents lived on Dominica.  The people who were familiar with them and who were most affected by their demise are there.

In an undated declaration, Ursula Joseph, decedent Kelly John's mother, asserts that she "would be unable for financial and legal reasons to travel back to Dominica during the trial."[14]  Asserting that New Jersey is her "permanent home" where she has "resided" since February of 1999, and that her sister, Mary Anthony, who is the personal representative of Kelly John's estate, is a citizen of the United States residing in New Jersey, Joseph contends that it would be impossible for her to present the testimony of Anthony and her family "without considerable expense."  These witnesses only saw Kelly on annual visits to Dominica and did not interact with him on a regular basis like others in Dominica.  She complains that traveling from New Jersey to Dominica for trial would be too costly.[15]  Flying from Newark or Philadelphia to Dominica or St. Croix requires a stop-over at San Juan, Puerto Rico or Miami.  Flights from there to either island are available; and the travel time and cost are not significantly different.

Joseph does not explain what her "legal reasons" are that would prevent her from "travel[ing] back to Dominica during the trial."  Without such an explanation, one cannot

---

[13] *See* Renewed Motion for Summary Judgment, or in the Alternative, Motion to Dismiss on Grounds of *Forum Non Conveniens* (Doc. No. 150) at 27.

[14] *See* Ex. D to Amended Decl. of Richard Balsamo in Opposition to Defendant Cardinal Airlines' Motion to Dismiss on Grounds of *Forum Non Conveniens* (Doc. No. 160), ¶ 11.

[15] *Id.*, ¶¶ 4-6.

12

determine whether there is a real legal impediment.

Joseph is now asserting that Anthony is a United States citizen living in New Jersey. However, according to the complaint, Anthony is a citizen of Dominica.[16] Joseph, Kelly John's sole beneficiary under Dominican law, is a citizen of Dominica, temporarily living in New Jersey. There is no explanation why Anthony, Kelly John's aunt, was appointed as representative of the estate in Dominica. Nor is there any indication that the beneficiaries of the estate are United States citizens or residents.

The personal representative of the Estate of Jonathan Lake, the other remaining plaintiff, is a citizen of the Netherlands and a resident of St. Maarten. Neither she nor any of her damages witnesses have any connection to the United States Virgin Islands.

Like the public interests, the private interests favor dismissal. There is no real convenience for the plaintiffs that bolsters their choice of forum and outweighs the substantial private interests in this action being tried elsewhere. The plaintiffs have not offered a reason for filing this action here. Nor will we speculate why they brought this action in this district.[17]

---

[16] *See* Compl., ¶ 9.

[17] In addition to moving to dismiss on grounds of *forum non conveniens*, Cardinal moves for summary judgment on the ground that this court lacks subject matter jurisdiction, arguing that under Article 28 of the Warsaw Convention, the only appropriate forum for litigating this action is Dominica. Because a federal district court is not required to conclusively establish its own jurisdiction before dismissing a suit on *forum non conveniens* grounds when "considerations of convenience, fairness and judicial economy so warrant," *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007), we do not reach that jurisdictional issue.

Additionally, it appears that there is a different ground upon which to conclude that the district court lacks subject matter jurisdiction. Where a citizen or citizens of a foreign state are parties to an action, diversity must be based on either § 1332(a)(2) or § 1332(a)(3). Under § 1332(a)(2), federal jurisdiction exists where there is an action between a citizen or citizens of a state and citizens or subjects of a foreign state. Jurisdiction, under this provision, can be grounded only in cases between aliens on one side of the controversy and citizens on the other. *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494,

**Conclusion**

Evaluating the adequacy of the alternative forum, the plaintiffs' choice of forum, and the public and private interest factors implicated, we conclude that Dominica, the alternative forum, can adequately adjudicate the controversy, and is preferable to the District of the Virgin Islands.

---

499 (3d Cir. 1997). Section 1332(a)(3) grants federal jurisdiction when there is a controversy between diverse United States citizens and aliens are additional parties. *Dresser*, 106 F.3d at 497. In that case, when citizens of states are on both sides of the litigation and are completely diverse, the presence of aliens on one or both sides of the controversy does not destroy jurisdiction. *Dresser*, 106 F.3d at 497-98 (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993)). Cases between aliens on one side and aliens and citizens on the other "do not fit the jurisdictional pigeonhole" created by §§ 1332(a)(2) or (a)(3). *Id.* at 499 and n. 2; *Field v. Volkswagenwerk AG*, 626 F.2d 293, 296 (3d Cir. 1980); 15 James Wm. Moore, *et al.*, *Moore's Federal Practice*, § 102.77 (3d ed. 2009) (noting that "[c]ases in which only foreign parties are on one side and a mixture of foreign and domestic parties are on the other do not fit within Section 1332(a)(2) or (a)(3). . . . [T]he jurisdictional problem when there is a foreigner on one side and both a domestic and a foreign party on the other is not that there are foreigners on both sides, but that there are not citizens on both sides.").

Here, based on the allegations in the complaint and the parties' statements of undisputed facts regarding the citizenship of the plaintiffs at the time the complaint was filed, it is clear that the plaintiffs and the decedents are all aliens, and the defendants are comprised of both aliens and United States citizens. Thus, it appears that diversity jurisdiction cannot be grounded on either § 1332(a)(2) or (a)(3).

Nonetheless, because considerations of convenience, fairness and judicial economy weigh heavily in favor of dismissal, we refrain from deciding the question of subject matter jurisdiction. *See Sinochem*, 549 U.S. at 432.